## DARGAN v. WARING, ET AL.

1. A judgment creditor may resort to a court of equity not only to subject the equitable interests of his debtor, but for the purpose of removing impediments to the sale at its value, of an estate which may be reached by a *fieri facias*.

2. A suit in equity by a creditor to set aside a fraudulent deed and have the land of his debtor sold, gives to the complainant a lien which will not be defeated by a *bona fide* sale by the defendant, or under an execution on a judgment which is not a superior and continuing lien against other judgment creditors who use greater diligence.

3. The neglect of the plaintiff in a judgment to sue out execution from term
to term after the return of the original *fi. fa.*, will postpone his lien to a
junior judgment creditor, who has instituted a suit in equity to subject the
real estate of their debtor to the satisfaction of his judgment.

Appeal from the Court of Chancery at Mobile.

THE appellant filed his petition, stating that on the 28th
December, 1840, Sylvester L. Fowler, Charles Fowler and
Wm. Prout recovered a judgment in the circuit court of the
United States for the southern district of Alabama, against
John Ticknor, for the sum of $4991, besides costs; and on
the 31st of the same month and year, Thomas Crouch, Rich-
ard Crouch and Jesse Sneed recovered a judgment in the
same court against the same defendant for the sum of $7176
25, and costs.    On both these judgments, executions were
issued within one month after the rendition, and placed in
the marshal's hands, who made due return thereof; after-
wards, on the 1st of May, 1845, an execution was again is-
sued and placed in the hands of the marshal of the district
on the first named judgment, and on the 17th of the same
month, one was issued and delivered to the marshal on the
other judgment.

On the 7th July, 1845, certain real property situated in the
city of Mobile, was regularly sold by the marshal of the dis-
trict to satisfy these executions, of which the petitioner be-
came the purchaser for the sum of $7500, and received a
deed therefor.    This property is in the possession of Moses
Waring, under the order of the court of chancery appointing
him a receiver in the cause now pending in that court, in
which Joseph Wiswall is complainant, and John Ticknor and
James L. Day are defendants.    Wiswall alledges in his bill
that he is a creditor of John Ticknor, by a judgment ren-
dered by the circuit court of Mobile in the spring of 1842,
for $2233 17, and costs, on which execution has issued and
been returned, "no property found."    This bill is framed
for a discovery of assets of Ticknor, and to set aside a deed
by Ticknor to Day, executed on the 28th April, 1840, upon
the allegation that it is fraudulent as to creditors.    A decree
has been rendered, setting aside the deed and appointing
Waring a receiver.    Possession has been demanded of the

Dargan v. Waring, et al.

receiver and refused. Petitioner therefore prays that the receiver be withdrawn as to the premises in question, and that he be placed in possession thereof, and that such other relief as is proper be granted.

Wiswall answered, that at the time of the sale when petitioner purchased, he gave notice of the pendency of his suit and the proceedings therein. That he is informed and believes that the petitioner paid no money upon his purchase, but the property was purchased on behalf of the plaintiffs in the executions, and the amount credited on the judgments or one of them : *Further*, that the plaintiffs in the first named judgment, long previous to the petitioners' purchase, became bankrupts under the act of Congress of 1841, and that David A. Hall, of Baltimore or Washington, is their duly appointed assignee in bankruptcy; and on the 7th of March, 1845, respondent was served with the copy of a petition filed by Hall in the court of chancery at Mobile, which he has since been informed was withdrawn.

Respondent is informed that the judgment in favor of the Crouches and Sneed is founded upon a bill of exchange to which several mercantile firms besides those individuals were parties, that judgments were rendered thereon against all but one of the firms, but as to the individuals against whom judgments were rendered, no executions were ever issued : *Further*, that these plaintiffs have filed their bill in the circuit court of the United States for the southern district of Alabama, for relief against the deed executed by Ticknor to Day, and for satisfaction of their judgment.

Ticknor and Day merely answer that they are parties to the suit of Wiswall, and neither object nor assent to the prayer of the petitioner.

Waring answers that he was appointed receiver in the suit referred to, that he acquired possession of the property by attornment of the tenant, and that petitioner's purchase was made after notice had been given of these facts. The fact of notice was proved by the affidavit of K. B. Sewall.

The chancellor was of opinion that the property in question could not have been sold under execution until the deed from Ticknor to Day was set aside, and previous to this, the executions on which the petititioner relies to sustain his pur-

chase acquired no lien; that Wiswall acquired a lien by
filing his bill, which was strengthened by the decree vacat-
ing the deed from Ticknor to Day, and appointing a receiv-
er; that this decree placed the property in such a situation
that it could not have been levied on; consequently the sale
on which petitioner relies is a nullity.    The petition was ac-
cordingly dismissed with costs.    Thereupon the petitioner
moved the court for leave to bring an action of ejectment
against the receiver, which motion was denied; and from
the decision dismissing the petition, and the refusal to per-
mit the action to be brought, this appeal is prosecuted.

J. A. CAMPBELL, for the appellant, made the following
points:   1. A court of chancery will interfere summarily in
favor of third persons whose rights have been invaded under
its order, or process.   [Hoffm. Ch. Pr. 155; 2 Mad. Ch. 22;
2 Ball & B. Rep. 66; 1 Swanst. R. 457; 9 Paige's R. 372,
437; 7 Id. 65, 513; 10 Id. 43, 263.]

2. The executions under which the petitioner claims were
levied before the order in chancery appointing a receiver;
and the land consequently in the custody of the federal court
when the court of chancery intervened.   Equity will not in-
terfere with the rights of judgment creditors who are pursu-
ing their liens.   [15 Eng. Cond. Ch. Rep. 715; 2 Story's
Rep. 376.]

3. The conveyance from Ticknor to Day was void as to
the creditors of the former, and the judgments in the federal
courts operated a lien on the land in question.   If the inter-
ests which the bill of Wiswall is seeking to condemn were
merely equitable, then it might be conceded that a court of
chancery should be resorted to, and his lien would be supe-
rior to the other judgment creditors; but as this is not the
case, it cannot be admitted that the filing of the bill defeated
the lien of the executions.   [See 10 Johns. Rep. 517; 9
Paige's Rep. 372, 437; Meigs' Rep. 317; 1 Eq. Dig. §§
339-40.]

4. Where judgments *create a lien*, equity follows the law,
and yields priority to the oldest judgment in the distribution
of assets.    The question comes up in the effort to reach equi-
table interests under the section of the statute of frauds which

authorizes the sale of trust estates under the execution. In that condition they are deemed legal assets, and are administered in equity according to law. [See *Ram.* on Assets, 317; 2 Lomax's Dig. 119; 4 Paige's Rep. 42; 2 Hoff. Ch. Prac. 112.]

5. The jurisdiction by petition, and upon the matters stated in that filed in the present case, we think is maintainable. [3 Ala. Rep. 156.]

K. B. Sewall, for the appellees, insisted that the petitioner's title dates from the execution of the marshall's deed, (1 Rich. Eq. Rep. 340,) and he could only acquire the estate which Ticknor then had. [7 Ala. Rep. 119.] At that time the land was in the possession of the court of chancery at the suit of Wiswall, of which the petitioner had actual notice; and was held under the order of the court for the benefit of the party ultimately entitled. [3 P. Wms. Rep. 379; 2 Story's Eq. § 833.] The possession then was adverse to Ticknor, so that there was no interest on which the executions from the federal court could operate a lien. [10 Paige's Rep 43.]

The mortgage was forfeited, and the legal title in Day, (7 Ala. Rep. 440,) and Ticknor's title, if any, was a mere equity of redemption, not subject to levy and sale. [Bing. on Judgm. 99; 2 Atk. Rep. 292; 3 Id. 730; Coote on Mortg. 325, 330; 3 Bro. Ch. Cas. 478; 1 Murp. R. 333; 15 Pick. R. 83, 84; Caine's Cases, 47; 5 Ala. Rep. 584; 7 Id. 118; 1 Hill's N. Y. Rep. 108, 112.]

The deed to Day is merely voidable, and will be set aside as void at the instance of the creditor who impeaches it, but as to all others it stands good. [2 Edw. R. 123-4.] A judgment is only a general lien on the real estate of the defendant, (10 Cond. Eng. Ch. Rep. 502; 2 H. & Johns. Rep. 66; 1 Johns. Ch. R. 55-6,) and may be lost by negligence. [4 Ala. Rep. 543; 14 Eng. Cond. Ch. Rep. 417; P. Wms. R. 277; 2 Id. 491; 3 Murp. R. 43; 3 Swanst. R. 536.]

Wiswall acquired a specific lien by filing his bill, upon all the estate of Ticknor which could probably be reached by suit in equity, (2 Paige's Rep. 567; 20 Johns. Rep. 554; 5 Monr. Rep. 73; 9 Dana's Rep. 20; 1 Paige's Rep. 637; 10

Dargan v. Waring, et al.

Id. 598; 2 Scho. & Lef. Rep. 399,) and the creditor who first files his bill acquires priority as the reward of his diligence. But this preference in virtue of a statute in New York, extends only to equitable interests and personal property. [2 Hoff. Ch. Prac, 113-14; 2 Rev. Stat. of N. Y. 173, § 38, 39.]

The return of "no property found," is *prima facie* evidence of no legal estate in Ticknor, and the filing of Wiswall's bill gave the court jurisdiction, and placed the property under its control, and it will not be withdrawn so as to defeat the suit. [9 Dana Rep. 19, 20.] Having acquired jurisdiction, chancery will grant relief, although the title to the property be purely legal. [1 Story's Eq. § 64, 71; 4 Ala. Rep. 481; 7 Id. 945; 13 Pet. Rep. 151; 9 Wheat. R. 932.]

The executions under which the petitioner claims, were issued pending the suit of Wiswall, and can acquire no efficacy by relation to the executions previously issued—these had lost all their virtue by the return of "no property found," and chancery had exercised its control over the property at the suit of another creditor—had in fact adjudicated the question of its liability to Wiswall, and committed the property to the possession of a receiver. Under such circumstances it will not avail the petitioner that the judgments under which he claims exerted a prior lien; the court must examine for itself the nature of the adverse claim. [8 Paige's R. 389; 2 Story's Eq. § 801; 15 Eng. Cond. Ch. R. 749.]

The office of a petition is not to oppose or annul a decree. [1 Smith's Ch. Prac. 71; 13 Ves. Rep. 393.] If the petitioner is entitled to relief in equity, he must proceed regularly by bill.

To show when a creditor's bill may be filed, the counsel cited 3 Paige's R. 312; Rev. Stat. N. Y. 359, § 3; 360, § 12, 13; 363, § 1, 2, 3; 368, § 26.]

COLLIER, C. J.—A judgment creditor may resort to a court of equity not only to subject the equitable interests of his debtor, but for the purpose of removing impediments to the sale at its value of an estate which may be reached by a

125

*fieri facias.* It has been held, that he may file his bill to set aside a fraudulent conveyance of land as soon as he has obtained a judgment which is a lien upon it, (Mohawk Bank v. Atwater, 2 Paige's R. 54;) and to entitle him thus to proceed it is not necessary that he should first sue out an execution. [3 Paige's Rep. 320. But see 1 Monr. Rep. 106, 231; 4 Id. 580; 1 Litt. Rep. 302; 2 McC. Ch. Rep. 410; 1 Paige's Rep. 305.] A suit in equity by a creditor to set aside a fraudulent deed, and have the land of his debtor sold, it has been decided, gives the complainant a lien on the land, which will not be defeated by a *bona fide* sale by the defendant, or under an execution on the judgment of another creditor. In such case, the purchaser under the execution *pendente lite*, will be overreached by the purchase under the decree, and the chancellor will compel him to surrender the possession. [5 Monr. Rep. 73; see 1 Dev. Eq. Rep. 537; 1 Hill's Ch. Rep. 297, 301; 9 Wend. Rep. 548; 6 Ohio R. 233.]

In the case at bar, Wiswall not only recovered a judgment against Ticknor, but he caused execution to be issued, which was returned "no property found;" the object of his bill was to vacate a conveyance (among other things) of land which Ticknor had made to Day, upon the ground that it was fraudulent. The jurisdiction of equity is well maintained by the authorities cited, and the most material question to be considered is, whether it can be divested by a subsequent levy and sale under a senior judgment. However this may be, where the lien of the judgment is paramount to that which attached by virtue of the suit in chancery, it is perfectly clear, that if the lien of the latter gave the superior right, the petitioner did not acquire a title by his purchase to which the possession can be yielded.

In Newdigate v. Lee and Rees, 9 Dana's Rep. 20, it was determined that the filing of a bill by a judgment creditor to subject the land of his debtor, or at least the service of process upon the bill, gives the complainant a lien on the property, by placing it under the control of the court, which will not suffer it to be withdrawn so as to defeat the object of the bill by any subsequent act or title. If the land is sold under an execution which came to the officer's hands, after

the bill had been filed, the purchaser must take it subject to the decree.   So in Sumner v. Kelly, 2 Scho. & Lef. R. 398, it was decided, that when a decree has been obtained by a creditor on behalf of himself and other creditors, a prior creditor who has obtained a judgment a law in ejectment grounded on an *elegit* shall not be allowed to get into possession. *The Lord Chancellor* remarking that he could not suffer the proceedings in the court to be disturbed by letting any creditor get into possession.

. The neglect of the plaintiffs under whose judgments the petitioner claims, to sue out executions from term to term, after the return of the originals, if it did not give to the execution in favor of Wiswall the superior lien, yet when connected with the filing of the bill, it had that effect.   This, we think, results not only from the plain language of the statutes upon the subject of executions, but from the repeated judicial expositions they have received.   [See 1 Stew. R. 72; 3 Id. 433; 2 Stew. & P. Rep. 390; 4 Id. 237; 5 Ala. Rep. 43; 4 Id. 93, 679; 7 Id. 632.]   In respect to the lien of the judgments, it may be remarked that it has been decided, that a judgment gives to the creditor a lien on the real estate, not in virtue of any express statutory enactment, but as a consequence of the act of 1807, which gives the writ of *elegit* against the lands of which the debtor was seized at the time of obtaining the judgment.   [3 Ala. Rep. 560; 2 Stew. 401.]   At the common law a judgment did not operate a lien upon the real estate of the debtor; and the statute of Westminster, to which the right of lien owes its existence, does not in express words make the lands liable which the debtor had at the time of the judgment; but it is by implication and judicial construction, and by the election made by the plaintiff to sue out an *elegit* that a judgment is a lien upon the land.   [3 Murph. Rep. 43.]   But with us the act of 1812 preserves the lien, though the plaintiff causes a *fieri facias* to be issued.   [Clay's Dig. 199, § 1; 205, § 17.]

In Den ex dem. &c. v. Hill, 1 Hayw. Rep. 72, it was said a judgment binds the lands from the time it is rendered, so as to take from the debtor the right of disposing of them; but if a *fieri facias* issues upon a subsequent judgment, and

comes to the hands of the sheriff, and the lands of the debtor are levied on and sold thereunder, the title passes to the vendee. Between creditor and creditor, it is not the first judgment, but the first execution that gives the preference. To the same effect is a *dictum* in Campbell v. Spence, 4 Ala. 543; see 1 Stew. 72.]

If Wiswall, inssead of proceeding in equity to set aside the conveyance from Ticknor for the benefit of Day, had caused a *fieri facias* to be issued, and the land in question to be sold, the purchaser would have acquired a title divested of the lien of the older judgments, and he, himself, would have been entitled to the purchase money. We have seen that the commencement of his suit in equity gave to his judgment a specific lien, which that court would not allow to be divested; that it was allowable for him to go into chancery and ask the removal of a fraudulent incumbrance, which would have prevented the land from yielding an equivalent at a sale under execution. Wiswall then, by the course he has pursued, cannot stand in a less favorable position, than if he had caused a levy and sale to be made; but his rights are precisely the same, and his superior diligence gives him a preference of the judgment creditors, under whose executions the petitioner purchased.

The view we have taken is decisive of the cause, and as the result cannot be changed, we decline considering the other question discussed. The order of the court of chancery dismissing the petition, and the refusal to permit an ejectment to be brought, (if the latter part of the order is susceptible of revision,) is affirmed.