ELEANOR GERTRUDE RIEBENACK

*v.*

HAZEL M. CROCKETT et al.

[Submitted February 9th, 1914.  Determined April 8th, 1914.]

1. That a buyer of personal property from an insolvent debtor permits the latter to remain in possession for a season does not render the transaction void *per se* as a conveyance in fraud of creditors, but such possession is regarded only as a badge of fraud, to be considered in connection with the other circumstances in determining the good faith of the transfer.

2. In order that a transfer of personal property by an insolvent debtor to his creditor, not followed by an immediate change of possession, shall be valid as against the debtor's other creditors, it must be based on a good consideration, and must be made in good faith.

3. Where a creditor of an insolvent, knowing that a purchase of certain of the debtor's personal property and a credit of the price on the debt was the only way he would be able to get anything, made the purchase, and, in order to do so, agreed that the debtor might retain possession for a season, without any actual fraudulent intent on the part of the purchaser, the transfer was not fraudulent as against the debtor's other creditors.

On final hearing on bill to set aside bill of sale.

*Mr. Ulysses G. Styron,* for the complainant.

*Messrs. Garrison & Voorhees,* for the defendants.

LEAMING, V. C.

I regret that I am unable to accept as true the testimony of Miss Crockett or Miss Armitage.  While the purchase of the property on South Carolina avenue was made in the name of Miss Crockett I am unable to believe that the purchase was made solely in her interest.  It is reasonably apparent that some secret agreement existed between her and Miss Armitage touching the benefits to flow from the purchase of that property which both

have concealed at the hearing. Their inability to give convincing testimony touching facts which should have been within the knowledge of both of them, had the transaction been as they claimed, almost destroys the value of all of their testimony. About all that Miss Crockett appeared to know was that she purchased the property on the "second mortgage plan;" she did not even know that she received on the second mortgage enough money to enable her to make the $5,000 cash payment to her vendor and to retain for her own use a surplus, and yet in fact she received from the second mortgagee $1,217 as such surplus. Her testimony touching her lease to Miss Armitage disclosed that she did not even know what rent had been paid under that lease. All this might have been explained by the fact that Miss Armitage was the moving spirit in management; but Miss Armitage's apparent knowledge of these matters was no less incomplete and inaccurate. It seems impossible to escape the conviction that some undisclosed secret agreement in fact existed between these two ladies. The truth probably is that the purchase was in the nature of a joint enterprise which was managed by Miss Armitage in the name of Miss Crockett.

As between the present complainant and defendant Steelman, who was the innocent and pronounced victim in the purchase, all this would be measurably immaterial in determining his status as a purchaser of the furniture, but for the fact that he admittedly agreed, at the time of the purchase of the furniture, to allow the furniture to remain for the use of Miss Armitage for a period of time. If this entire enterprise was the joint adventure of Miss Crockett and Miss Armitage, it may be urged that allowing the furniture to remain for the use of Miss Armitage was, in force and effect, the same as allowing it to remain for the use of Miss Crockett, the apparent vendor. Indeed the correspondence between defendant Steelman and Miss Armitage may well be regarded as affording notice to the former of some mutual interest or rights of these two ladies.

Section 11 of our statute of frauds (*2 Comp. Stat. p. 2617*) provides that every conveyance or transfer of goods, chattels or things in action made in trust for the use of the person making

the same, shall be void as against creditors, and the following section renders conveyances or transfers of real estate or chattels void if made with intent to hinder, delay or defraud creditors. Under these provisions it has been frequently held by the courts in England and in this country that the law does not permit a debtor, in failing circumstances, to sell his land or chattels and make an absolute conveyance thereof by instrument without reservations, and at the same time reserve to himself the right to possess or occupy the land or chattel for a limited time, for his own benefit. In such circumstances it is held that the reservation of the right of possession is inconsistent with the terms of the conveyance and must be regarded as a secret trust in favor of the grantor even though a full consideration is paid by the purchaser and no trust or fraud is in fact intended. Such conveyances are therefore held to be absolutely void under the statute referred to. This is the view presently entertained by our federal supreme court, and is stated in *Lukins* v. *Aird, 6 Wall. 78,* as follows:

"It is not important to inquire, whether, as a matter of fact, the defendant had a purpose to defraud the creditors of Aird, for the fraud in this case is an inference of law, on which the court is as much bound to pronounce the conveyances in question void as to creditors, as if the fraudulent intent were directly proved. There is no necessity of any general discussion of the provisions of the statutes of Elizabeth, concerning fraudulent and voluntary conveyances, as this suit is within narrow limits, and the principle on which we rest our decision too well settled for controversy. The law will not permit a debtor in failing circumstances to sell his land, convey it by deed, without reservations, and yet secretly reserve to himself the right to possess and occupy it for a limited time, for his own benefit. *Wooten* v. *Clark, 23 Miss. 75; Arthur* v. *Com. & R. R. Bk., 9 Sm. & M. 394; Towle* v. *Hoit, 14 N. H. 61; Paul* v. *Crooker, 8 N. H. 288; Smith* v. *Lowell, 6 N. H. 67.* Such a transfer may be upon a valuable consideration, but it lacks the element of good faith; for while it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it,

inconsistent with its terms, securing a benefit to the grantor, at the expense of those he owes. A trust, thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right—the right of possession—and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors."

But although this view is adopted in *Scott* v. *Hartman, 26 N. J. Eq. 89, 92,* it cannot be here accepted at this time. In *Muchmore* v. *Budd, 53 N. J. Law 369, 390 et seq.,* our court of appeals has adopted the view that the circumstances referred to should not be deemed adequate to render such a transfer void *per se,* but should be regarded as only a badge of fraud to be considered in connection with other circumstances of the case in determining the good faith of the conveyance or transfer.

Two elements must concur to render such a conveyance valid as against creditors. It must be made upon good consideration and must be *bona fide. Sayre* v. *Fredericks, 16 N. J. Eq. 205, 209.* In the present case it cannot be doubted that the conveyance was made upon a good consideration. Defendant Steelman was a creditor to an amount far in excess of the value of the goods purchased by him, and I am unable to doubt the truth of his testimony to the effect that he had become satisfied that the purchase of the furniture afforded him his only opportunity to get anything, and that he in fact made the purchase and gave a credit for the full value of the goods purchased. When the conveyance is not voluntary, but is upon an adequate consideration, the rule is that in order to overthrow it, a fraudulent intent must be made to appear. *Haston* v. *Castner, 31 N. J. Eq. 697, 705.* And to this rule must be added the further requirement that it must also appear not only that the fraudulent intent existed upon the part of the vendor but such intent must have been participated in by the vendee or he must have been cognizant of or chargeable with knowledge of the unlawful motive of his vendor, when he accepted the conveyance. *Roe* v. *Moore, 35 N. J. Eq. 526; Muirheid* v. *Smith, Ibid. 303, 308; Mechanics National Bank* v. *Northrup, 22 N. J. Eq. 55, 60.* It is difficult to escape the conviction that the im-

11

pelling motive of Miss Crockett in making the conveyance in question was the opportunity thereby afforded to secure the use of the chattels for a period of time for herself or for her associates in the general enterprise, and defendant Steelman undoubtedly knew of his debtor's financial distress; but I am unable to reach the conclusion that he transcended his rights as a creditor under the circumstances then existing. His impelling motive and sole aim was to get what he could on account of his claim. It was his debtor's right to prefer her creditor and it was the creditor's right to seek and accept preferment—*Roe v. Moore, supra* (at *p. 527*)—and in the absence of any motive or purpose other than to collect a portion of the money due him he was within his rights. The consent to allow the goods purchased to remain on the premises for a time is, as already stated, primarily a badge of fraud, but does not in itself constitute fraud, and the evidence satisfies me that his only reason for granting that privilege is found in the circumstance that it did not inconvenience him and rendered the accomplishment of his primary purpose more easy; I am fully satisfied that the idea or motive of extending to his debtor a means of enjoying a valuable right at the expense or detriment of other creditors was not entertained by him; such purpose may have been entertained by the debtor, but was not, in my judgment, shared by him. My views touching the difference in the position of a creditor seeking to collect his money, and that of a purchaser who has no existing interest to protect, are fully stated in *Atlantic Refining Co.* v. *Stokes, 77 N. J. Eq. 119,* and need not be here restated.

I am obliged to advise a decree dismissing the bill.